UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

|  |  |
|---|---|
| **AMERICAN ENTERTAINERS LLC**, ) <br> a North Carolina limited liability company, ) <br> doing business as "GENTLEMEN'S ) <br> PLAYGROUND" ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **CITY OF ROCKY MOUNT,** ) <br> **NORTH CAROLINA**, ) <br> ) <br>     Defendant. ) <br> _____/ | CASE NO.: |

## **COMPLAINT**

Plaintiff, AMERICAN ENTERTAINERS LLC files this Complaint against the Defendant, CITY OF ROCKY MOUNT, pursuant to 42 U.S.C. §1983, seeking a judgment declaring various Ordinances and policies of the CITY OF ROCKY MOUNT to be unconstitutional under the First and Fourteenth Amendments to the United States Constitution. Plaintiff further prays for issuance of an injunction against those unconstitutional ordinances and practices. In the alternative, Plaintiff seeks relief under state law, pursuant to the Court's supplemental jurisdiction, declaring that it is not subject to the CITY's adult entertainment ordinances by virtue of its format and the parties' agreements and course of dealing.

### **JURISDICTION**

1.      This suit is brought pursuant to 42 U.S.C. Section 1983:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state or territory or the District of Columbia, subject, or causes to be subject, any citizen of the United States or other person in the jurisdiction therefore to the deprivation of any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in the action at law, suit and equity, or other proceedings for redress...

2.     This Court has "Federal Question" jurisdiction pursuant to 28 U.S.C. §1331 to hear cases arising under the Constitution of the United States, under 28 U.S.C. §1343(3) to redress the deprivation under color of state law of any right, privilege or immunity secured by the Constitution, and under 28 U.S.C. §1343(4) to secure equitable or other relief for the protection of civil rights.

3.     This Court also has jurisdiction under N.C.G.S. §1-253, to enter declaratory judgments and to provide supplemental relief. The value of the relief sought exceeds $75,000.00.

4.     The Court has the authority to issue declaratory judgments and permanent injunctions pursuant to 28 U.S.C. §§2201 and 2202, and Rule 65, Fed.R.Civ.P.

5.     This Court may enter an award of attorney's fees pursuant to 42 U.S.C. §1988.

6.     This Complaint seeks declaratory and injunctive relief to prevent violations of the Plaintiff's rights, privileges and immunities under the Constitution of the United States and Title 42 U.S.C. §§ 1983 and 1988, specifically seeking redress for the deprivation under color of state statute, ordinance, regulation, custom or usage of rights, privileges, and immunities secured by the Constitution and laws of the United States. The rights sought to be protected in this cause of action arise and are secured under the First and Fourteenth Amendments to the Constitution.

Case 5:14-cv-00438-D   Document 1   Filed 07/31/14   Page 2 of 46

## VENUE

7.     The CITY OF ROCKY MOUNT is located in the Eastern District of North Carolina. All acts complained of herein have occurred in the Eastern District of North Carolina. The parties and the subject property are located in Nash County, North Carolina. Venue is proper in this Court under 28 U.S.C. §1391(b).

## PARTIES

8.     Plaintiff, AMERICAN ENTERTAINERS LLC, is a North Carolina limited liability company doing business as "GENTLEMEN'S PLAYGROUND" (herein referred to as "Plaintiff" or "GENTLEMEN'S PLAYGROUND") at 213 Dominick Drive, Rocky Mount, North Carolina, within the municipal limits of the City of Rocky Mount. Plaintiff's business features live exotic dance performances in a night club setting featuring a full-service bar.

9.     Defendant, CITY OF ROCKY MOUNT, is a North Carolina municipal corporation located in Nash County, North Carolina (herein referred to as "Defendant" or "CITY OF ROCKY MOUNT" or "CITY").

## COLOR OF STATE LAW

10.     As a political subdivision of the State of North Carolina, organized and operating under the laws of the State of North Carolina, the CITY OF ROCKY MOUNT and its governing officials were, and are, acting under color of state law and authority in adopting and enforcing the subject Ordinances. The enforcement and threatened enforcement of the subject Ordinances against Plaintiff is an action taken under color of state law and constitutes state action within the meaning of 42 U.S.C. §1983.

## PRIOR LITIGATION HISTORY

11.    Plaintiff initially opened its business at the 213 Dominick Drive location as a conventional nightclub in May, 2002.

12.    Shortly thereafter, Plaintiff switched formats to that of a gentlemen's club which provided live dance entertainment similar to that currently found at Gentlemen's Playground, but with performers who wore less clothing than is currently the case.

13.    The CITY regulates sexually oriented businesses (also referred to as "adult entertainment establishments") under Ordinance No. 0-00-35, which has been codified as Sections 13-270 through 13-299, *et seq.* of Article VII of Chapter 13 of the Rocky Mount Code of Ordinances (hereinafter referred to as "Article VII" or "the sexually oriented business ordinance" or "the Ordinance"). A copy of the Ordinance is attached as Exhibit "A" to this Complaint.

14.    In addition to the licensing and conduct restrictions found in Article VII, the CITY regulates the location of sexually oriented businesses through its Land Development Code, attached as Appendix "A" to the Rocky Mount Code of Ordinances. The listing of zoning districts and permissible uses is found in Chapter 5 of the Land Development Code. The particular restrictions regulating the location of sexually oriented businesses (called "Adult establishment" in the LDC) appear in Table 5-2 of Chapter 5 and Note 3 thereto (hereinafter referred to as "Chapter 5"). The relevant portions of Chapter 5 of the Land Development Code are attached as Composite Exhibit "B" to this Complaint.

15.    In 2003, the CITY threatened to enforce the City's adult entertainment ordinance against the Plaintiff, including arrests and the closure of the business.

16.    In response, the Plaintiff filed a lawsuit against the City in 2003 in the case

styled <u>American Entertainers, LLC v. City of Rocky Mount</u>, Case No.: 2003-cv-683 in the District Court for the Eastern District of North Carolina. That litigation alleged that the City could not constitutionally enforce its adult entertainment ordinances against the Plaintiff.

17. The litigation was settled through an exchange of letters. The substance of the settlement was that Plaintiff would be permitted to operate a "bikini bar" in which performers provided live exotic dance performances while clothed in "pasties and boy shorts". Pasties consist of fabric or other opaque material sufficient to cover the nipples and areola. Boy shorts cover the pubic area, anal cleft and a portion of the buttocks. The e-mail documenting the final terms of the settlement is attached as Exhibit "C" to this Complaint.

18. Plaintiff dismissed its litigation without prejudice on June 25, 2004, in reliance on that settlement agreement. A copy of the parties' stipulation for dismissal is attached as Exhibit "D" to this Complaint.

19. Plaintiff maintains that the parties' settlement agreement remains binding on the parties.

20. Beginning on October 10 or 11, 2003, Plaintiff began offering live dance performances in conformance with the parties' settlement agreement.

21. Plaintiff has provided such live dance performances continuously since October 2003, without incident and in conformance with the parties' settlement agreement.

## DESCRIPTION OF CURRENT BUSINESS

22. GENTLEMEN'S PLAYGROUND is not an adult entertainment establishment or sexually oriented business because the performers wear coverings over

their breasts, buttocks and pubic region at all times. In the language of the subject Ordinance, the performers do not display their "specified anatomical areas". In addition, performers at GENTLEMEN'S PLAYGROUND do not engage in "specified sexual acts". GENTLEMEN'S PLAYGROUND' business format may generally be described as a "bikini bar".

23.     The policy at Plaintiff's business requires performers to cover their nipples and areolae, buttocks and pubic region at all times during their dance routines. Performers who fail to follow that policy are subject to disciplinary action including the termination of their independent contractor agreements.

24.     The dance performances offered at Plaintiff's business continue to conform with the terms of the parties' settlement agreement reached in the 2003 litigation.

25.     The dance performances offered at Plaintiff's business are presumptively protected by the First Amendment to the United States Constitution. Plaintiff has a clear legal right to engage in protected speech of this nature.

26.     This expressive activity is performed before a consensual audience, all over the age of 18 years, desirous of receiving and enjoying the message conveyed by the entertainer of normal human sexual interest and sensual subtleties.

27.     Plaintiff believes that providing this form of expressive communication to the public is a beneficial social activity which enhances individuals' conscious ability to assimilate and consider various issues involving sexual candor and the interest in human sexuality that all human beings have to a greater or lesser degree. Plaintiff considers this expression to enhance the appreciation of the human body, with an emphasis on the consideration of popular contemporary concepts of physical attractiveness and the

Case 5:14-cv-00438-D   Document 1   Filed 07/31/14   Page 6 of 46

stimulating and entertaining aspects of same, which are characteristics of a normal and healthy interest in human sexuality.

28. The expression offered by Plaintiff's business is not intended to be, nor is it, obscene as contemplated by contemporary community standards. GENTLEMEN'S PLAYGROUND does not intend this expression to appeal to any prurient interest. GENTLEMEN'S PLAYGROUND believes the specified performances contain serious artistic value.

29. All of the Plaintiff's performances take place behind closed doors and none of the performances are visible to passersby or to those persons who have not voluntarily sought access to the establishment.

## ROCKY MOUNT ADULT ORDINANCES - SUMMARY

30. Sections 13-270 through 13-299, et seq. of Article VII of Chapter 13 of the Rocky Mount Code of Ordinances regulate sexually oriented businesses. This is the Ordinance which the CITY maintains applies to the Plaintiff.

31. The definition or description of what constitutes a "sexually oriented business" is found in Section 13-271(a) of the Rocky Mount Code of Ordinances. That description requires the examination of a number of separately defined terms as follows:

A. A "sexually oriented business" can be one of several individually defined businesses:

> *Sexually oriented business* means any adult bookstore, adult motion picture theatre, adult mini motion picture theatre, adult cabaret, or clothing modeling studio as defined in this article.

B. The sub-definition which deals with dancing establishments is the "adult cabaret", which is defined as follows:

*Adult cabaret* means any retail business or private club as defined in North Carolina General Statutes § 18B-1000 which: (a) serves food or beverages, or permits the consumption of food or beverages; and (b) regularly provides or has available for viewing by its patrons or members adult live entertainment.

C.      "Adult live entertainment" is in turn defined as follows:

*Adult live entertainment* means any performance of or involving the actual presence of real people which exhibits specified sexual activities or specified anatomical areas, as defined in this article.

D.      Ultimately, the determination of whether a business is an adult cabaret, and therefore a sexually oriented business, is whether it presents live performances in which the performer displays "specified anatomical areas" or engages "specified sexually activities". Those terms of art are also defined in the Code:

*Specified anatomical areas* means:

(1)     Less than completely and opaquely covered: (i) human genitals and pubic region, (ii) buttock, or (iii) female breast below a point immediately above the top of the areola; or (2) human male genitals in a discernibly turgid state, even if completely and opaquely covered.

*Specified sexual activities* means:

(1)     Human genitals in a state of sexual stimulation or arousal;

(2)     Fondling or other erotic touching of human genitals, pubic regions, buttocks or female breasts; or

(3)     Sex acts, normal or perverted, actual or stimulated, including intercourse, oral sex, masturbation, or sodomy; or

(4)     Excretory functions as part of or in connection with any of the activities set forth in subsection (1), (2), or (3) above.

32.     Essentially identical definitions are found in §102 of the Rocky Mount Land Development Code. The only difference between the definitions is that references in the Land Development Code are made to "the LDC" instead of "this article".

33. By definition, a business which allows live performers to display their "specified anatomical areas" or engage in "specified sexual activities" is a sexually oriented business subject to the licensing, zoning and conduct provisions of Article VII and Chapter 5.

34. By that same definition, a business in which live performers neither display their "specified anatomical areas" nor engage in "specified sexual activities" is not a sexually oriented business and is not subject to the licensing, zoning and conduct provisions of Article VII or Chapter 5 of the City's Land Development Code.

35. Those businesses subject to the City's sexually oriented business ordinance must obtain a license approved by the Chief of Police before they are allowed to open and operate:

Sec. 13-272(a)(1). Application for licenses.

(a) *Sexually oriented business license.*

(1) It shall be unlawful for any person to operate or maintain a sexually oriented business in the city unless the owner or operator thereof has obtained a sexually oriented business license from the city. It shall also be unlawful for any person to operate such business after such license has been revoked or suspended by the city or after such license has expired.

36. Adult cabarets are also subject to certain "conduct" regulations unique to that format. Those regulations appear in §13-280 of the Rocky Mount Code of Ordinances and include, *inter alia*, prohibitions against performances in closed rooms, room-size requirements, specifications for stages, prohibitions against direct tipping of performers and prohibitions against touching performers.

37. The Rocky Mount Land Development Code includes restrictions on where a sexually oriented business can locate. Pursuant to Table 5-2 of Chapter 5, such businesses

can only operate in the B-2 and B-5 zoning districts. Note 3 to the zoning matrix set forth in Table 5-2 imposes additional requirements in the form of separation buffers between sexually oriented businesses and schools, churches, childcare centers, public parks, or playgrounds as well as between one adult business and another.

38. Plaintiff's property is believed to be located on a conforming site: it is within a B-5 zoning district and met all of the separation requirements at the time it first opened for business in 2003.

## BONA FIDE DISPUTE; RELIEF SOUGHT

39. On July 18, 2014, Plaintiff received a letter from the Chief of Police for the CITY advising that the police would begin making arrests if Plaintiff did not obtain a sexually oriented business license under Article VII. The operative language of the letter is as follows:

> Effective August 1, 2014, the Rocky Mount Police Department will take criminal action against your business, Gentlemen's Playground, if the business has not come into compliance with Article VII of the Rocky Mount Code of Ordinances by applying for and obtaining a license to operate from the Chief of Police.

A copy of that correspondence is attached as Exhibit "E" to this Complaint.

40. The said letter also suggested that the Plaintiff contact the authorities "[i]f you feel that your establishment is in compliance with Article VII of the Rocky Mount Code of Ordinances…".

41. Plaintiff's local counsel promptly contacted the City's Attorney, by telephone and in writing, to convey Plaintiff's position that: (1) it was operating in conformity with the parties' settlement agreement which remained binding on the parties; and (2) that Plaintiff operated a bikini bar which was not subject to the City's sexually

oriented business ordinance.

42.     The City's Attorney reiterated the CITY's position that Plaintiff was violating the sexually oriented business ordinance and that the police would take "criminal action" against Plaintiff if it did not come into compliance with the Ordinance before August 1st.

43.     Plaintiff maintains that the ROCKY MOUNT ordinances regulating sexually oriented businesses have no application to its business or its particular format because: (1) Plaintiff's format was specifically approved by a settlement agreement which remains binding between the parties; and (2) its dance performances do not fall within the definition provided by the Ordinance because its performers are clothed and do not engage in specified sexual activities. However, to the extent that the Ordinance does apply to the Plaintiff, all of the CITY's regulations governing sexually oriented businesses are unconstitutional on their face and as applied to the Plaintiff for the reasons set forth in this Complaint.

44.     If this Court determines that Plaintiff does not operate a sexually oriented business and is not subject to the City's licensing, zoning and regulatory ordinances governing sexually oriented businesses, there will be no need to rule on Plaintiff's constitutional challenges set forth below.

45.     If this Court determines that the ROCKY MOUNT's sexually oriented business ordinance does apply to Plaintiff's activities, this Court will be called upon to declare those ordinances unconstitutional and unenforceable against Plaintiff and all other persons similarly situated.

46.     Plaintiff has a clear legal right to provide exotic entertainment to consenting

adult patrons without fear of censorship and selective enforcement by Defendant. Such communication is protected under the First Amendment to the United States Constitution. Furthermore, government actions to enforce local laws must afford due process to Plaintiff and similarly situated businesses.

47.     The threatened enforcement of ROCKY MOUNT's sexually oriented business ordinance against the Plaintiff has deprived and will continue to deprive Plaintiff, and its employees, contractors and patrons, of rights guaranteed under the First and Fourteenth Amendments to the United States Constitution.

48.     Plaintiff asserts that its position set forth in this Complaint is legally sound and supported by fact and law. The CITY's actions however have created a bona fide controversy between the parties, and Plaintiff is in doubt as to its rights, privileges and immunities with respect to the enforcement of the legislation at issue herein. Plaintiff therefore requires a declaratory judgment declaring its rights, privileges and immunities. There is a clear, present, actual, substantial, and *bona fide* justiciable controversy between the parties.

49.     Plaintiff will be unable to engage in speech which is clearly protected by the First Amendment to the United States Constitution and faces the prospect of criminal prosecution for such activities should an injunction not issue. Deprivation of rights guaranteed under the Constitution is an irreparable injury for purposes of injunctive relief.

50.     Plaintiff has not yet incurred damages other than the attorney's fees prayed for herein. However, should the CITY enforce its Ordinances as threatened in the July 18, 2014 letter from the Chief of Police, Plaintiff will be forced to either dramatically change its format or close its business. In either case, Plaintiff would suffer damages in the form

Case 5:14-cv-00438-D   Document 1   Filed 07/31/14   Page 12 of 46

of lost profits and loss of good will.

51.    The injury to Plaintiff, should the CITY enforce its unconstitutional ordinances, exceeds any possible harm to the CITY. Plaintiff's injury is the loss of a constitutional right. On the other hand, since no government agent may deprive any person of a right guaranteed by the Constitution, ROCKY MOUNT will suffer no injury if it is prevented from suppressing Plaintiff's constitutional rights, including the right to freedom of expression. The public has no lawful interest in the enforcement of unconstitutional laws.

52.    The public interest would be served by the granting of injunctive relief. In fact, the public interest is disserved by actions, such as those of ROCKY MOUNT which interfere with the public's rights guaranteed under the First Amendment.

53.    A permanent injunction will preserve Plaintiff's civil rights and avoid the need to compensate Plaintiff with money damages for violation of its rights.

54.    All conditions precedent to the institution and maintenance of this cause of action have occurred or have been performed.

## COLOR OF STATE LAW

55.    As a political subdivision of the State of North Carolina, organized and operating under the laws of the State of North Carolina, the CITY OF ROCKY MOUNT and its governing officials were, and are, acting under color of state law and authority in adopting and enforcing the subject Ordinances. The enforcement and threatened enforcement of the subject Ordinances against Plaintiff is an action taken under color of state law and constitutes state action within the meaning of 42 U.S.C. §1983.

**ATTORNEY'S FEES**

56.     Plaintiff has retained GARY S. EDINGER, RICHARD L. WILSON and DOUGLAS E. TURNER, JR as their attorneys to represent them in this action and have agreed to pay them a reasonable fee, which fee the CITY OF ROCKY MOUNT must pay pursuant to 42 U.S.C. 1988.

**COUNT I**

**Declaratory Relief – No Sexually Oriented Business**

57.     Plaintiff re-allege and incorporate paragraphs 2 through 56 of its Complaint as if fully set out herein.

58.     This is an action for declaratory judgment pursuant N.C.G.S. §1-253, N.C. Gen. Stat. Ann. and the supplemental jurisdiction of this Court.

59.     Plaintiff seeks a declaratory judgment that it does not operate a sexually oriented business and that neither Article VII nor the zoning regulations governing adult businesses apply to its establishment.

60.     Plaintiff is uncertain as to its rights and remedies under Article VII of the Rocky Mount Code of Ordinances and Chapter 5 of the Rocky Mount Land Development Code, and under the Constitutions of the United States and the State of North Carolina.

61.     While at Plaintiff's establishment, Plaintiff's performers cover their breasts and bottoms with opaque coverings so that their "specified anatomical areas" are never exposed.

62.     While at Plaintiff's establishment, Plaintiff's performers do not engage is those actions defined as "specified sexual activities" under the CITY'S ordinances.

63.     Plaintiff maintain that it operates a "bikini bar" which, by definition, is not

subject to the CITY's regulations pertaining to sexually oriented businesses. Furthermore, Plaintiff does not advertise, promote or offer nude or topless performances at GENTLEMEN'S PLAYGROUND.

64.      Plaintiff operates lawfully and in the same manner as it has for the past eleven (11) years. During that time period the CITY has never maintained that Plaintiff operated a sexually oriented business. In particular, the CITY never required Plaintiff to apply for or obtain a sexually oriented business license under Article VII. Until the July 18, 2014 letter from the Chief of Police, the CITY has never suggested that Plaintiff needed such a license.

65.      Plaintiff maintains that it does not operate as a sexually oriented business and neither allows nor wishes to allow the exposure of specified anatomical areas nor the conduct of any specified sexual acts.

**WHEREFORE**, Plaintiff prays for the following relief:

A.      That this Court take jurisdiction over the parties and this cause;

B.      That this Court enter a judgment declaring that Plaintiff's business constitutes a lawful use at its present location.

C.      That this Court enter a judgment declaring that Plaintiff's business is not subject to Article VII of the Rocky Mount Code of Ordinance or the provisions in Chapter 5 of the Rocky Mount Land Development Code relative to adult businesses, because Plaintiff does not operate a sexually oriented business.

D.      That this Court award Plaintiff all other supplemental relief in law and in equity to which it may be entitled.

Case 5:14-cv-00438-D   Document 1   Filed 07/31/14   Page 15 of 46

**Declaratory Relief**

**Settlement and Course of Dealing Exclude Plaintiff from Adult Ordinance**

66.　Plaintiff re-allege and incorporate paragraphs 2 through 56 of its Complaint as if fully set out herein.

67.　This is an action for declaratory judgment pursuant N.C.G.S. §1-253 and the supplemental jurisdiction of this Court.

68.　Plaintiff seeks a declaratory judgment that it does not operate a sexually oriented business and that neither Article VII nor the zoning regulations governing adult businesses applies to its establishment.

69.　Plaintiff is uncertain as to its rights and remedies under Article VII of the Rocky Mount Code of Ordinances and Chapter 5 of the Rocky Mount Land Development Code, and under the Constitutions of the United States and the State of North Carolina.

70.　At the conclusion of the 2003 litigation in Case No.: 2003-cv-683, the parties entered into an understanding regarding the quantity of clothing which would be the dividing line between a sexually oriented business regulated under Article VII and Chapter 5, and a bikini bar which would be unregulated by those ordinances.

71.　The parties agreed in 2003 that pasties and boy shorts would be sufficient clothing for Plaintiff's performers and that performances by dancers so clothed would not transform Plaintiff's bikini bar into a sexually oriented business.

72.　Plaintiff has honored its agreement with the CITY for the last eleven years by ensuring that all of its performers wear at least pasties and boy shorts. Plaintiff has further ensured that all dance choreography is lawful with no actions which could be

characterized as specified sexual activities.

73.    The CITY has honored its agreement with the Plaintiff from 2003 until July 18, 2014. During that time, the CITY knowingly permitted Plaintiff's performers to dance in pasties and boy shorts and never required Plaintiff to obtain a sexually oriented business license or to comply with the other provisions of Article VII or Chapter 5 of the LDC.

74.    Plaintiff maintains that its present format does not fall within the definition of "sexually oriented business" and, in particular, that it is not an "adult cabaret".

75.     To the extent there is any ambiguity concerning the definition of an "adult cabaret", or how much clothing is too little under the definition of "specified anatomical areas", or what acts may constitute "specified sexual activities" those ambiguities were resolved by way of the parties' 2003 settlement agreement and their subsequent course of dealing over the next eleven years.

76.    Plaintiff operates lawfully and in the same manner as it has for the past eleven years. During that time period the CITY has never maintained that Plaintiff operated a sexually oriented business. In particular, the CITY never required Plaintiff to apply for or obtain a sexually oriented business license under Article VII. Until the July 18, 2014 letter from the Chief of Police, the CITY has never suggested that Plaintiff needed such a license.

77.    Plaintiff maintains that it does not operate as a sexually oriented business and neither allows nor wishes to allow the exposure of specified anatomical areas nor the conduct of any specified sexual acts.

**WHEREFORE**, Plaintiff prays for the following relief:

A.    That this Court take jurisdiction over the parties and this cause;

Case 5:14-cv-00438-D   Document 1   Filed 07/31/14   Page 17 of 46

B.      That this Court enter a judgment declaring that Plaintiff's business constitutes a lawful use at its present location.

C.      That this Court enter a judgment declaring that the parties' settlement agreement and subsequent course of conduct demonstrate that the Plaintiff's business is not subject to Article VII of the CITY's Code of Ordinance or the provisions in Chapter 5 of the Rocky Mount Land Development Code relative to adult businesses, because Plaintiff does not operate a sexually oriented business.

D.      That this Court award Plaintiff all other supplemental relief in law and in equity to which it may be entitled.

**COUNT III**

**State Law Claim - Specific Performance**

78.      Plaintiff re-alleges and incorporates paragraphs 2 through 56 of its Complaint as if fully set out herein.

79.      This is an action in equity for specific performance of a contract under the laws of the State of North Carolina and pursuant to the supplemental jurisdiction of this Court.

80.      In 2003, the parties entered into a settlement agreement for the resolution of the prior litigation between the parties in Case No.: 2003-cv-683.

81.      The specific terms of the settlement agreement are as set forth in the exchange of letters attached as Exhibit "C" to this Complaint. The terms can be summarized as an agreement that Plaintiff would be entitled to operate a bikini bar with performances by dancers dressed in "pasties and boy shorts" and that such format would not constitute a sexually oriented business under the City's ordinances.

82.     Under the terms of the parties' settlement agreement, Plaintiff was not required to obtain a sexually oriented business license and was not required to comply with the other provisions of Article VII of the Rocky Mount Code of Ordinances or the restrictions on adult cabarets found in Chapter 5 of the Rocky Mount Land Development Code.

83.     The CITY has honored its agreement with the Plaintiff for a period of some eleven years from 2003 until July 18, 2014. During that time, the CITY knowingly permitted Plaintiff's performers to dance in pasties and boy shorts and never required Plaintiff to obtain a sexually oriented business license or to comply with the other provisions of Article VII or Chapter 5 of the LDC.

84.     The CITY breached the parties' agreement on July 18, 2014 when the Chief of Police sent a letter to Plaintiff demanding that it obtain a sexually oriented business license and otherwise comply with Article VII.

85.     Plaintiff has performed and complied with all the terms and conditions of the parties' agreement. In particular, Plaintiff confined its dance performances to the parameters set forth in the settlement agreement.

86.     There have been no change of circumstances which would excuse either party from the strict and faithful performance of their respective obligations under the said settlement agreement.

87.     There is no justification or excuse for the CITY's breach and failure to perform under the parties' settlement agreement.

88.     The exact amount of Plaintiff's damages is incapable of precise determination, particularly with respect to future loss of profits and future loss of goodwill

and the impairment of its constitutional right of free expression. Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff prays that the CITY OF ROCKY MOUNT be required to perform under the subject settlement agreement and, specifically, that Plaintiff be permitted to continue dance performances under its current format without being compelled to apply for a sexually oriented business license or be subject to the regulations and restrictions of Article VII or Chapter 5.

## <u>COUNT IV</u>
### State Law Claim - Estoppel

89.     Plaintiff re-alleges and incorporates paragraphs 2 through 56 of its Complaint as if fully set out herein.

90.     This is an action in equity under the laws of the State of North Carolina and pursuant to the supplemental jurisdiction of this Court to estop the CITY from forcing Plaintiff to change its present dance format

91.     In 2003, the parties entered into a settlement agreement for the resolution of the prior litigation between the parties in Case No.: 2003-cv-683.

92.     As a municipal entity, the CITY is authorized to construe its own Code of Ordinances and is permitted to enter into a binding agreement concerning the proper construction and enforcement of its law. By definition, that is a governmental function and the CITY acted in a governmental capacity when it entered into the said agreement with the Plaintiff.

93.     The specific terms of the settlement agreement are as set forth in the exchange of letters attached as Exhibit "C" to this Complaint. The terms can be

summarized as an agreement that Plaintiff would be entitled to operate a bikini bar with performances by dancers dressed in "pasties and boy shorts" and that such format would not constitute a sexually oriented business under the City's ordinances.

94.     Under the terms of the parties' settlement agreement, Plaintiff was not required to obtain a sexually oriented business license and was not required to comply with the other provisions of Article VII of the Rocky Mount Code of Ordinances or the restrictions on adult cabarets found in Chapter 5 of the Rocky Mount Land Development Code.

95.     The CITY honored its agreement with the Plaintiff for a period of some eleven years from 2003 until July 18, 2014. During that time, the CITY knowingly permitted Plaintiff's performers to dance in pasties and boy shorts and never required Plaintiff to obtain a sexually oriented business license or to comply with the other provisions of Article VII or Chapter 5 of the LDC.

96.     Plaintiff relied to its detriment on the agreement with the CITY in the following respects:

A.     Plaintiff dismissed its original litigation with the CITY in 2003 in reliance on the parties' settlement agreement. Some of the claims raised in the original litigation may now be barred by the statute of limitations. Even if not completely barred by the statute of limitations, the long period of time which has transpired means that evidence has been lost and witnesses have disappeared, thus crippling Plaintiff's ability to litigate those issues.

B.     Over the intervening eleven years Plaintiff has invested tens of thousands of dollars in the leasing, maintenance and development of its business. Plaintiff would have

Case 5:14-cv-00438-D   Document 1   Filed 07/31/14   Page 21 of 46

avoided those expenses and would not have renewed its lease had it known that the CITY would not allow it to maintain its particular business format.

C.    Plaintiff has established good will based on the particular business format allowed under the parties' settlement agreement. That good will is likely to be lost or degraded if Plaintiff is forced to change its business format.

97.    On July 18, 2014, the Chief of Police sent a letter to Plaintiff advising that the CITY would no longer honor the parties' agreement and demanding that Plaintiff obtain a sexually oriented business license and otherwise comply with Article VII.

98.    Plaintiff has performed and complied with all the terms and conditions of the parties' agreement. In particular, Plaintiff confined its dance performances to the parameters set forth in the settlement agreement.

99.    There have been no change of circumstances which would excuse either party from the strict and faithful performance of their respective obligations under the said settlement agreement.

100.    Equity demands that the parties be required to continue to honor their commitments and obligations under their settlement agreement.

101.    Estoppel is necessary in this instance to prevent the loss of Plaintiff's business as well as its right to engage in free expression in the form of constitutionally protected dance performances.

102.    The CITY should be estopped from demanding strict compliance with its regulations pertaining to sexually oriented businesses and, in particular, should be estopped from requiring that Plaintiff apply for and obtain a license under Article VII of the Rocky Mount Code of Ordinances.

Case 5:14-cv-00438-D   Document 1   Filed 07/31/14   Page 22 of 46

103.    Estoppel will not impair the exercise of the governmental powers of the CITY. The CITY remains free to enforce Article VII and Chapter 5 of its LDC in proper circumstances, excluding Plaintiff's establishment.

104.    The estoppel sought in this case is limited to a negotiated and reasonable construction of the CITY's Code of Ordinances, which construction is entirely supported by the language of the Code and the actual facts of this case. That negotiated construction is fully reflected in the particular language of the parties' settlement agreement, which specifically authorizes the Plaintiff to engage in constitutionally protected dance.

105.    Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff prays that the CITY OF ROCKY MOUNT be estopped from enforcing Article VII of its Code of Ordinances or Chapter 5 of its Land Development Code (insofar as it restricts the location of sexually oriented businesses) against the Plaintiff and, in particular, that the CITY be estopped from requiring that Plaintiff obtain a sexually oriented business license under Article VII.

## COUNT V
### Declaratory Relief – Lawful Nonconforming Use

106.    As an alternative count, Plaintiff re-alleges and incorporates paragraphs 2 through 56 of its Complaint as if fully set out herein.

107.    This is an action for declaratory judgment pursuant N.C.G.S. §1-253 and the supplemental jurisdiction of this Court.

108.    Elsewhere in this Complaint, Plaintiff seeks a declaratory judgment that it does not operate a sexually oriented business and that neither Article VII nor the zoning regulations governing adult businesses applies to its establishment.

109. Plaintiff further maintains that its establishment is located on property which conforms to the zoning and separation requirements for a sexually oriented business (even though it maintains that it does not operate such an establishment at this time).

110. Should this Court find that Article VII and Chapter 5 apply to the Plaintiff and that Plaintiff does not currently meet the Chapter 5 locational criteria, Plaintiff is entitled to a declaratory judgment that it may lawfully operate GENTLEMEN'S PLAYGROUND under its current format, at its current location, as a lawful, nonconforming use.

111. Plaintiff is uncertain as to its rights and remedies under the Rocky Mount Land Development Code and Code of Ordinances, and under the Constitutions of the United States and the State of North Carolina.

112. Plaintiff maintain that it operates a "bikini bar" which, by definition, is not subject to the CITY's regulations pertaining to sexually oriented businesses.

113. Plaintiff leased the subject property and began operating the GENTLEMEN'S PLAYGROUND in reliance on the 2003 settlement agreement with the CITY as above-described.

114. At the time the parties entered into the settlement agreement, Plaintiff met the requirements for both a "bikini bar" and a sexually oriented business. In particular, Plaintiff's business is located in the B-5 zone and met the separation requirements from those uses listed as disqualifiers in the CITY's Land Development Code.

115. Plaintiff's bikini bar format was and is consistent with the CITY's zoning ordinances and has been continuously licensed as an alcoholic beverage establishment.

116. Plaintiff's land use rights vested at the time it opened under the 2003

settlement agreement reached with the CITY.

117.    Plaintiff has not materially changed their format since GENTLEMEN'S PLAYGROUND opened on October 2003.

118.    The sudden and inexplicable decision by ROCKY MOUNT to declare, after the passage of eleven years, that Plaintiff is an unlicensed sexually oriented business cannot divest Plaintiff of its vested property rights.

119.    Plaintiff maintain that it is entitled to the status of a lawful nonconforming use as its right to do business at their present location vested at a time when the CITY recognized it to be a lawful and conforming use.

120.    The laws of the State of North Carolina and the Rocky Mount Code of Ordinances expressly provide for the continued maintenance of a use made nonconforming by later government action.

**WHEREFORE**, Plaintiff prays for the following relief:

A.    That this Court take jurisdiction over the parties and this cause;

B.    That this Court enter a judgment declaring that Plaintiff's business constitutes a lawful nonconforming use at its present location;

C.    That this Court enter a judgment declaring that Plaintiff has vested property rights to operate a "bikini bar" at its present location;

D.    That this Court enter a judgment declaring that the ROCKY MOUNT's land use regulations pertaining to sexually oriented businesses cannot be enforced against Plaintiff so long as it maintains its status as a lawful nonconforming use.

E.    That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT VI

### Inadequate Showing of Adverse Secondary Effects – Facial Claims

121.    Plaintiff re-alleges and incorporates paragraphs 1 through 56 of its Complaint as if fully set out herein.

122.    This is an action for declaratory relief and injunctive relief brought under this Court's general jurisdiction and pursuant to Title 28, United States Code and 42 U.S.C. §1983.

123.    Plaintiff maintains that it operates a bikini bar which is not subject to the regulations of sexually oriented businesses found in Article VII of the Rocky Mount Code of Ordinances or Chapter 5 of the Land Development Code. However, to the extent that those provisions do apply to Plaintiff – or potentially apply to it – Plaintiff has standing to raise constitutional challenges to those laws.

124.    A "time, place and manner" regulation of constitutionally protected expression and/or expressive conduct is unconstitutional if the regulation does not further a substantial government interest and is not narrowly tailored to do so. In the context of adult entertainment such a regulation does not further such an interest unless the regulating authority or municipality can demonstrate a connection between the constitutionally protected expression and adverse secondary effects which prompted the adoption of the regulation.

125.    This substantial government interest can only be established if the regulating authority or municipality presents actual facts and/or evidence that some adverse or negative secondary effects exist that will be addressed by the regulation. Furthermore, a municipality must demonstrate some actual factual basis and/or relevant evidence that the

protected expressive activity causes or results in adverse secondary effects. This asserted factual basis and/or evidence must be reasonably believed by the regulating authority or municipality to be relevant to the problems that their regulation seeks to address.

126.     ROCKY MOUNT did not consider, review or rely on any testimony, studies, case law or other evidence of secondary effects when it enacted Article VII of its Code of Ordinance or the regulations pertaining to sexually oriented businesses in Chapter 5 of its Land Development Code.

127.     ROCKY MOUNT has not and cannot produce any relevant evidence, facts or studies of any kind, concerning the existence of any adverse secondary effects or a connection between the requirements of Article VII and Chapter 5 and such secondary effects. ROCKY MOUNT has not and cannot produce or demonstrate any actual relevant evidence or facts showing any nexus or connection between Plaintiff's constitutionally protected expression and any alleged adverse or negative secondary effects. ROCKY MOUNT has failed to present or document any actual relevant facts or evidence of any adverse harm created or caused by GENTLEMEN'S PLAYGROUND's business activities or others.

128.     In order for a governmental authority to prove adverse secondary effects, it cannot use shoddy data, but must garner evidence that justifies the infringement on free speech and expression.

129.     Evidence must be presented by the governmental authority showing that adult entertainment establishments cause unique adverse secondary effects.

130.     GENTLEMEN'S PLAYGROUND does not generate any adverse secondary effects different in quantity, kind or character than any other commercial

establishment operating in Rocky Mount.

131.    Article VII and Chapter 5 are not supported by a sufficient evidentiary predicate; that is, the "studies" cited in support of secondary effects constitute shoddy data and are belied by actual local conditions.

132.    Article VII and Chapter 5 were enacted without consideration of any pertinent studies which demonstrate a nexus between adult businesses and any adverse secondary effects. *See*, City of Los Angeles v. Alameda Books, Inc., 535 U.S. 439, 122 S.Ct. 1728, 1736 (2002). In particular, Plaintiff alleges:

A.    ROCKY MOUNT did not consider, review or rely on any testimony, studies, case law or other evidence of secondary effects when it enacted Article VII and Chapter 5.

B.    To the extent that the CITY did consider any such evidence, that evidence was not relevant to this particular community. Any "studies" relied on by ROCKY MOUNT are drawn from obsolete examples and scientifically flawed reports which are demographically unrelated to the actual circumstances found in ROCKY MOUNT.

C.    To the extent the ordinances are based on "studies" of any kind, those studies consist of shoddy data or reasoning; the City's evidence does not fairly support its rationale for its ordinances.

D.    There was no testimony or evidence that the adult business(es) already operating in the City had generated adverse secondary effects of any kind. There were no local studies conducted and no local data in support of Article VII or Chapter 5.

E.    The adult businesses already operating in the City and in nearby communities do not cause adverse secondary effects of any kind, which fact is both known

Case 5:14-cv-00438-D   Document 1   Filed 07/31/14   Page 28 of 46

to the CITY and the subject of empirical proof. No reasonable legislator could believe that adult businesses cause adverse secondary effects in the community or are likely to do so in the future.

133. Any attempt to enforce Article VII or Chapter 5 against Plaintiff is illegal and unconstitutional because the ordinances lack a proper factual predicate for their and the ordinances are content-based.

**WHEREFORE**, Plaintiff prays for the following relief:

A. That this Court take jurisdiction over the parties and this cause;

B. That this Court enter a judgment declaring Article VII of the Rocky Mount Code of Ordinances and the restrictions on sexually oriented business in Chapter 5 of the Land Development Code (i.e. the zoning matrix in Table 5-2 and the accompanying Note 3), to be unconstitutional under the First and Fourteenth Amendments to the United States Constitution.

C. That this Court enter an injunction permanently enjoining ROCKY MOUNT and its agents, servants, and employees from enforcing Article VII or Chapter 5 against Plaintiff or any other similarly situated businesses;

D. That this Court award Plaintiff its recoverable costs, including a reasonable attorney's fee pursuant to 42 U.S.C. §1988; and

E. That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## <u>COUNT VII</u>
### No Adverse Secondary Effects – As-Applied Claims

134. Plaintiff re-alleges and incorporates paragraphs 1 through 56 of its

Complaint as if fully set out herein.

135.     This is an action for declaratory relief and injunctive relief brought under this Court's general jurisdiction and pursuant to Title 28, United States Code and 42 U.S.C. §1983.

136.     Plaintiff maintains that it operates a bikini bar which is not subject to the regulations of sexually oriented businesses found in Article VII of the Rocky Mount Code of Ordinances or Chapter 5 of the Land Development Code. However, to the extent that those provisions do apply to Plaintiff – or potentially apply to it – Plaintiff has standing to raise constitutional challenges to those laws.

137.     A "time, place and manner" regulation of constitutionally protected expression and/or expressive conduct is unconstitutional if the regulation does not further a substantial government interest and is not narrowly tailored to do so. In the context of adult entertainment such a regulation does not further such an interest unless the regulating authority or municipality can demonstrate a connection between the constitutionally protected expression and adverse secondary effects which prompted the adoption of the regulation.

138.     This substantial government interest can only be established if the regulating authority or municipality presents actual facts and/or evidence that some adverse or negative secondary effects exist that will be addressed by the regulation. Furthermore, a municipality must demonstrate some actual factual basis and/or relevant evidence that the protected expressive activity causes or results in adverse secondary effects. This asserted factual basis and/or evidence must be reasonably believed by the regulating authority or municipality to be relevant to the problems that their regulation seeks to address.

139.    Even if the CITY can demonstrate that it has an interest in regulating the secondary effects of businesses properly described as a sexually oriented business, that interest does not extend to the particular format and particular circumstances of GENTLEMEN'S PLAYGROUND.

140.    The government interest in regulating sexually oriented businesses is conventionally tied either to the prevention of actual sexual activities or to the display of nudity. Nudity, when allowed in the presence of alcoholic beverages, is perceived to be the primary source of the adverse secondary effects supposedly associated with true sexually oriented businesses.

141.    Plaintiff's performers are not nude and they do not engage in sexual activities.

142.    As previously noted, GENTLEMEN'S PLAYGROUND provides dance performances by clothed performers. In particular Plaintiff's performers do not expose their "specified anatomical areas" but instead cover their nipples and areolae, their pubic region and substantially all of their buttocks, including the anal cleft.

143.    The CITY has considered no evidence, and there is no evidence in Rocky Mount or elsewhere in the United States, showing that bikini bars employing Plaintiff's particular format generate adverse secondary effects of any kind.

144.    When the parties entered into their settlement agreement in 2003, the CITY necessarily acknowledged that dance performances utilizing Plaintiff's particular format did not and would not generate adverse secondary effects. Plaintiff provides the following particulars in support of this allegation:

A.    The CITY, after being fully informed of the circumstances, specifically

Page 31 of 46

agreed that Plaintiff's format would be lawful under the CITY's existing ordinances.[1]

B.     Presumably, the CITY would not have entered into that agreement unless the government interest was fully served by the restrictions placed on Plaintiff's business.

C.     Since the government interest is regulating sexually oriented businesses is based on the amelioration of adverse secondary effects, the CITY necessarily concluded that the restrictions placed on Plaintiff's business in the settlement agreement would prevent the occurrence of such adverse secondary effects.

D.     The agreed format involved neither nudity nor topless entertainment.

145.     There has been no intervening change in circumstances since the parties' settlement agreement which could lead a reasonable legislator to conclude that Plaintiff is generating or might generate adverse secondary effects in 2014, when it was not doing so in 2003.

146.     As a matter of provable, objective fact Plaintiff's particular format has not generated any adverse secondary effects in the community. Plaintiff's business has not led to declining property values, increased crime or any of the other adverse secondary effects cited by the CITY as the basis for regulating sexually oriented businesses.

147.     Even if Article VII and the relevant provisions of Chapter 5 can be constitutionally enforced against sexually oriented businesses generally, they cannot be constitutionally enforced against Plaintiff's particular business format.

**WHEREFORE**, Plaintiff prays for the following relief:

A.     That this Court take jurisdiction over the parties and this cause;

---

[1] The CITY's adult entertainment laws were enacted in 2000, before Plaintiff opened its business and before the parties' settlement agreement.

B. That this Court enter a judgment declaring Article VII of the Rocky Mount Code of Ordinances and the restrictions on sexually oriented business in Chapter 5 of the Land Development Code (i.e. the zoning matrix in Table 5-2 and the accompanying Note 3), to be unconstitutional as applied to the Plaintiff under the First and Fourteenth Amendments to the United States Constitution.

C. That this Court enter an injunction permanently enjoining ROCKY MOUNT and its agents, servants, and employees from enforcing Article VII or Chapter 5 against Plaintiff or any other similarly situated businesses;

D. That this Court award Plaintiff its recoverable costs, including a reasonable attorney's fee pursuant to 42 U.S.C. §1988; and

E. That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

<u>COUNT VII</u>

**Licensing Provisions Impose an Unconstitutional Prior Restraint**

148. Plaintiff re-alleges and incorporates paragraphs 1 through 56 of its Complaint as if fully set out herein.

149. This is an action for declaratory relief and injunctive relief brought under this Court's general jurisdiction and pursuant to Title 28, United States Code and 42 U.S.C. §1983.

150. Plaintiff maintains that it operates a bikini bar which is not subject to the regulations of sexually oriented businesses found in Article VII of the Rocky Mount Code of Ordinances or Chapter 5 of the Land Development Code. However, to the extent that those provisions do apply to Plaintiff – or potentially apply to it – Plaintiff has standing to

raise constitutional challenges to those laws.

151.     Section 13-272 of the Rocky Mount Code of Ordinances requires that every sexually oriented business obtain a "sexually oriented business license" from the Chief of Police before it can operate.

152.     Section 13-272 imposes a prior restraint on free speech because it requires government permission in the form of a license before a business and/or employee can engage in expression.

153.     Section 13-272 creates an unconstitutional prior restraint because the licensing provisions do not meet the procedural safeguards mandated by the Supreme Court in FW/PBS v. City of Dallas, 493 U.S. 215, 110 S.Ct. 596, (1990).

154.     The granting of a sexually oriented business permit can be withheld arbitrarily by the licensing authority so that Plaintiff's right to a permit is illusory. Plaintiff alleges the following particulars:

A.      The permitting review process allows the Police Chief unbridled discretion in determining whether to grant or deny a license. In particular:

(1)      Section 13-273(d)(2) allows the Chief of Police to deny a license based upon his determination that "the operation, as proposed by the applicant, if permitted, would not comply with all applicable laws, including, but not limited to, the city's building, zoning, and health regulations". That provision is not limited to material violations nor does it constrain the Police Chief's ability to pick and choose between unspecified code provisions. Furthermore, the determination as to whether operations "would not comply" is left to the Chief's unfettered discretion. Almost identical provisions have been declared unconstitutional in other cases. *See, e.g.*, Fly Fish, Inc. v. City of Cocoa Beach, 337 F.3d

1301, 1312-13 (11th Cir. 2003); Miami Herald Pub. Co. v. City of Hallandale, 734 F.2d 666, 674 (11th Cir. 1984).

(2)     Section 13-273(d)(3) allows the Chief of Police to deny a license if "any of the stockholders holding more than ten (10) percent of the stock of the corporation" have been convicted of certain crimes. That provision is unconstitutional in two respects:

(a)     The Ordinance does not elsewhere require the disclosure of stockholders in an SOB application, which leaves it to the discretion of the Chief of Police whom he will consider to be a relevant stockholder; and

(b)     To the extent that the Ordinance requires the disclosure of minor stockholders or allows a licensing decision to be based on such forced disclosures, the Ordinance imposes an unreasonable burden on free speech and infringes upon the right of anonymity. Similar restrictions are routinely stricken as unconstitutional. *See*, Lady J. Lingerie, Inc. v. City of Jacksonville, 176 F.3d 1358, 1366 (11th Cir. 1999); Pack Shack, Inc. v. Howard Cnty., 377 Md. 55, 77, 832 A.2d 170, 183 (2003).

B.     The 15-day time period specified in Section 13-273(e) for the Chief of Police to grant or deny a permit is illusory. While an applicant is permitted to open without a license if no decision has been rendered within 15 days, the Chief of Police can thereafter deny the license at any time he chooses and direct the closure of the business:

(e)     Approval or denial of application. The chief of police shall act to approve or deny a complete application for a license under this article as soon as reasonably possible and in any event shall approve or deny said license fifteen (15) business days from the date that said application was accepted. Upon the expiration of the fifteenth (15th), unless the applicant consents to an extension of time, the applicant shall be permitted to begin operating the sexually oriented business for which the license is sought, *unless and until the chief of police notifies the applicant of a denial and states the reason(s) for denial.*

The conditional right to open is illusory and does not satisfy the requirement that a decision be rendered in a brief, specified period of time. Almost identical provisions have been declared unconstitutional in other cases. *See, e.g.*, <u>Fly Fish</u>, 337 F.3d at 1313-14; <u>Lady J Lingerie</u>, 176 F.3d at 1363.

155.     The Ordinance is violative of due process on its face because it fails to provide all of the <u>Freedman</u> protections for license applications, renewals, suspensions and revocations.

156.     The unconstitutional provisions of the licensing scheme are so intertwined with the rest of the Ordinance, and with the City's regulatory scheme for adult businesses, that severance is not possible.

WHEREFORE, Plaintiff prays for the following relief:

A.     That this Court take jurisdiction over the parties and this cause;

B.     That this Court enter a judgment declaring Section 13-273 of Art. VII of the Rocky Mount Code of Ordinances to be unconstitutional, on its face and as applied to Plaintiff, as it imposes an unlawful prior restraint in violation of the First and Fourteenth Amendments;

C.     That this Court enter a judgment declaring that the licensing provisions of Article VII are not severable from the remainder of the Ordinance thereby invalidating the entirety of the sexually oriented business ordinance;

D.     That this Court enter an injunction permanently enjoining ROCKY MOUNT and its agents, servants, and employees from enforcing Section 13-273 of Art. VII of the Rocky Mount Code of Ordinances, and such other portions of the Ordinance as this Court may find to be unconstitutional with respect to Plaintiff or any other similarly

situated businesses;

E.     That this Court award Plaintiff its recoverable costs, including a reasonable attorney's fee pursuant to 42 U.S.C. § 1988; and

F.     That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT VIII

### Lack of Alternative Avenues of Communication; Insufficient Sites

157.   Plaintiff re-alleges and incorporates paragraphs 1 through 56 of its Complaint as if fully set out herein.

158.   This is an action for declaratory relief and injunctive relief brought under this Court's general jurisdiction and pursuant to Title 28, United States Code and 42 U.S.C. §1983.

159.   Plaintiff maintains that it operates a bikini bar which is not subject to the regulations of sexually oriented businesses found in Article VII of the Rocky Mount Code of Ordinances or Chapter 5 of the Land Development Code. However, to the extent that those provisions do apply to Plaintiff – or potentially apply to it – Plaintiff has standing to raise constitutional challenges to those laws.

160.   In addition to licensing and conduct restrictions, the CITY regulates the location of sexually oriented businesses through its Land Development Code, attached as Appendix "A" to the Rocky Mount Code of Ordinances. The listing of zoning districts and permissible uses is found in Chapter 5 of the Land Development Code.

161.   The particular restrictions regulating the location of sexually oriented businesses (called "Adult establishment" in the LDC) appear in Table 5-2 of Chapter 5, the

relevant excerpt of which appears below:

**Table 5-2: General Use Table**
**Transitional, Business and Industrial Districts**

| | Transitional Districts | | | Business Districts | | | | | Industrial Districts | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Permitted Uses | O-I | O-I(2) | MA | B-1 | B-2 | B-3 | B-4 | B-5 | I-1 | I-2 | IP |
| Adult establishment (see note 3) | | | | | x | | | x | | | |

162.    Note 3, referenced in the Table 5-2 zoning matrix, imposes additional restrictions, including separation buffers, and reads as follows:

> *3.*    *Adult entertainment establishment.* It is the intent of this provision to establish reasonable regulations to prevent a concentration of adult establishments within the city and to provide a buffer between adult establishments and the protected uses specified below. Adult establishments are permitted in B-2 and B-5 districts subject to the following standards:
>
> a.    Separation from other adult entertainment uses. Any structure in which an adult establishment is the principal or accessory use shall be separated by a distance of at least five hundred (500) feet (determined by a straight line and not street distance, without regard to intervening structures or objects) from any other adult establishment.
>
> b.    Separation from other uses. Any structure in which an adult establishment is the principal or accessory use shall be separated by a distance of at least five hundred (500) feet (determined by a straight line and not street distance, without regard to intervening structures or objects) from any residential zoning district, or other

Case 5:14-cv-00438-D   Document 1   Filed 07/31/14   Page 38 of 46

zoning district in which residential use is a use by right, any school, church, childcare center, public park, or playground.

c.      Prohibited activities. An adult entertainment use shall not be conducted in any manner that provides the observation of any material depicting, describing or relating to "specified sexual activities" or "specified anatomical areas," from any public right-of-way. This provision shall apply to any display, decoration or show window.

d.      The distance for the separation from residential zoning and other protected uses shall be measured from the closest edge of the building occupied by an adult establishment to the nearest property line of the residential zoning district or other zoning district in which residential use is a use by right, or to the property line of a protected use. The distance for the separation between adult establishments shall be measured from the closest edges of the buildings occupied by adult uses.

e.      No more than one (1) adult establishment may be located within the same structure.

f.      Adult establishments are permitted in any district within an enclosed retail shopping mall without regarding to separation provided such establishments have their only frontage upon the enclosed mall isolated from view from public streets, churches, childcare centers, schools, public parks, and public playgrounds. An adult establishment within an enclosed retail shopping mall shall not display any signs, graphics, or other depictions or descriptions that are in any way related to "specified sexual activities" or specified "anatomical areas" and are visible from the interior or exterior of the mall.

163.    Accordingly, in order for an adult establishment to open and operate in Rocky Mount, it must be located in either the B-2 or B-5 zoning district[2] and must satisfy

---

[2] The permissible uses in the B-2 "commercial corridor district" include the following:

*B-2, commercial corridor district.* The B-2 district is established for major

additional separation requirements from schools, churches, childcare centers, public parks, playgrounds and other adult establishments.

164.    A church has recently open on property less than 500 feet from Plaintiff's business. That church is considered a disqualifying use for sexually oriented businesses under the Rocky Mount Land Development Code.

165.    Plaintiff believes that the CITY is attempting to force Plaintiff to close its business, or to relocate its business, on the theory that it is a sexually oriented business and that the church is a disqualifying use because Plaintiff did not hold an SOB license at the time the church opened.

166.    GENTLEMEN'S PLAYGROUND was open and operating prior to the opening of the church. Accordingly, to the extent that Plaintiff's business is treated as a sexually oriented business subject to the provisions of Chapter 5, it must be considered a lawful preexisting use, so that the later-established church could not disqualify Plaintiff's location.

167.    There is a bona fide dispute between the parties as to whether Plaintiff can operate under its current format at its current location or whether Plaintiff must relocate to a site which meets the zoning and setback requirements for sexually oriented businesses.

---

retail and service activities removed from the central business district…

The B-5 "business service district" is intended for the following general uses:

*B-5, business service district.* This B-d District is intended for business and warehouse support services that support the regular needs of the primary activities in the B-4 district, along rail sidings and primary streets. It is designed to support a wide variety of commercial uses in the adjacent rail sidings and primary streets adjacent to the traditional downtown central business district…

168.     There are an insufficient number of sites within ROCKY MOUNT where adult businesses may have a reasonable opportunity to open and operate. That is, the CITY fails to provide alternate avenues of communication. In particular, Plaintiff alleges:

A.     Rocky Mount is a significant metropolitan area with a population of approximately 57,477, encompassing some 44 square miles within its jurisdictional boundaries.

B.     The areas set aside for adult entertainment establishes represents only a small percentage of the City when measured in terms of total area and/or as a percentage of the City available for other commercial uses.

C.     When coupled with the distance requirements, there are no sites available in the City to which Plaintiff can relocate, or there are an insufficient number of sites given the City's demographics.

169.     The locational restrictions imposed by Chapter 5 have created a virtual "zone-out" for adult entertainment establishments meaning that there are no sites or a vanishingly small number of conforming sites where adult businesses can open and operate as a matter of right.

170.     There are no sites or an insufficient number of sites to which Plaintiff could relocate its business. Because of the unavailability of conforming locations, Plaintiff will be forced to close its business and discontinue its free speech if the City enforces its Ordinance, as threatened, on August 1, 2014.

**WHEREFORE**, Plaintiff prays for the following relief:

A.     That this Court take jurisdiction over the parties and this cause;

B.     That this Court enter a judgment declaring Chapter 5 of the Rocky Mount

Land Development Code to be unconstitutional under the First and Fourteenth Amendments to the United States Constitution, because the Ordinance does not provide sufficient alternative avenues of communication for sexually oriented businesses;

C.    That this Court enter an injunction permanently enjoining ROCKY MOUNT and its agents, servants, and employees from enforcing Chapter 5 of the Rocky Mount Land Development Code against Plaintiff or any other similarly situated businesses;

D.    That this Court award Plaintiff its recoverable costs, including a reasonable attorney's fee pursuant to 42 U.S.C. §1988; and

E.    That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

## COUNT IX
## ADDITIONAL CONSTITUTIONAL DEFECTS

171.    Plaintiff re-alleges and incorporates paragraphs 1 through 56 of its Complaint as if fully set out herein.

172.    This is an action for declaratory relief and injunctive relief brought under this Court's general jurisdiction and pursuant to Title 28, United States Code and 42 U.S.C. §1983.

173.    Plaintiff maintains that it operates a bikini bar which is not subject to the regulations of sexually oriented businesses found in Article VII of the Rocky Mount Code of Ordinances or Chapter 5 of the Land Development Code. However, to the extent that those provisions do apply to Plaintiff – or potentially apply to it – Plaintiff has standing to raise constitutional challenges to those laws.

174.    The definition of "specified sexual activities" found in §13-273 of the City's

Case 5:14-cv-00438-D   Document 1   Filed 07/31/14   Page 42 of 46

Code of Ordinances and §102 of the Rocky Mount Land Development Code is substantially overbroad and is not narrowly tailored to meet the asserted government interest. That definition includes the following component:

> (2) Fondling or other erotic touching of human genitals, pubic regions, buttocks or female breasts; or

That prohibition is not limited to "realistic impressions" of actual sexual acts and is not limited by any administrative construction which would otherwise serve to constrain the broad reach of the law. *See, e.g.*, <u>Schultz v. City of Cumberland</u>, 228 F.3d 831, 847 (7th Cir. 2000); *Contrast*, <u>Giovani Carandola, Ltd. v. Fox</u>, 470 F.3d 1074, 1083 (4th Cir. 2006).

175. Section 13-273(d)(6) requires the Chief of Police to deny an SOB license if "[t]he applicant, if an individual, or any of the officers and directors, if the applicant is a corporation…is not over the age of twenty-one (21) years". The Ordinance prohibits Plaintiff from appointing or employing any person between the ages of 18 and 21 as an officer of the Plaintiff. Thus, a *sui juris* person who is over the age of eighteen is denied his constitutional right to engage in free speech to the same extent as older persons. That provision violates the First Amendment rights of citizens over the age of 18, but younger than 21. In addition, that provision violates the Equal Protection rights of such citizens as they are prevented from participating in corporations to the same extent as other *sui juris* citizens for an irrational and discriminatory reason. Similar restrictions on the rights of persons over the age of eighteen have been stricken as unconstitutional. Cf., <u>State v. Cafe Erotica, Inc.</u>, 269 Ga. 486, 500 S.E.2d 574 (1998) (Ban on persons under the age of 18 from entering a sexually oriented business violates the First Amendment).

176. Paragraph 3 a. of Note 3 to Table 5-2 of the Rocky Mount Land Development Code requires that adult businesses be separated from each other by at least

500 feet. That provision is void and violates due process because it conflicts with and is preempted by N.C.G.S. §14–202.11. *See*, <u>Onslow Cnty. v. Moore</u>, 129 N.C. App. 376, 386-87, 499 S.E.2d 780, 787 (1998).

177.    Section 13-280(b)(4)b of the Rocky Mount Code of Ordinances prohibits an adult cabaret from providing adult entertainment if only a single customer is in the establishment:

(4)    Adult live entertainment may occur only:
…

b.    In the presence of and visually observable by more than one (1) patron;

There is no government interest in requiring that entertainment be provided to multiple patrons at one time; a single patron should be entitled to enjoy the entertainment offered by Plaintiff's performers. This restriction imposes a burden on speech without furthering any legitimate government interest.

178.    Sections 13-280(e) and (f) of the Rocky Mount Code of Ordinances is unconstitutionally overbroad and is not narrowly tailored to further any legitimate government interest. Those provisions prevent any physical contact between patrons and performers at all times and on every occasion:

(e)    It shall be unlawful for an adult entertainer to touch a patron or the clothing of a patron at an adult cabaret.

(f)    It shall be unlawful for a patron at an adult cabaret to touch an adult entertainer.

Notably, the two restrictions are not confined to circumstances in which the adult entertainer is nude or is performing. Under the terms of this Ordinance an entertainer and the operator of a club are subject to arrest and criminal prosecution if a fully-clothed

entertainer on her coffee break has any physical contact whatsoever with a patron – even so much as a handshake.

**WHEREFORE**, Plaintiff prays for the following relief:

A.      That this Court take jurisdiction over the parties and this cause;

B.      That this Court enter a judgment declaring the definition of "specified sexual acts" (*See*, §13-273 of the City's Code of Ordinances and §102 of the Rocky Mount Land Development Code), together with §§13-273(d)(6), 13-280(b)(4)b, 13-280(e) and 13-280(f)of the ROCKY MOUNT Code of Ordinances, and Paragraph 3 a. of Note 3 to Table 5-2 of the Rocky Mount Land Development Code to be unconstitutional for the reasons set forth in this Complaint.

C.      That this Court enter an injunction permanently enjoining ROCKY MOUNT and its agents, servants, and employees from enforcing the definition of "specified sexual acts" (*See*, §13-273 of the City's Code of Ordinances and §102 of the Rocky Mount Land Development Code) together with §§13-273(d)(6), 13-280(b)(4)b, 13-280(e) and 13-280(f)of the ROCKY MOUNT Code of Ordinances, and Paragraph 3 a. of Note 3 to Table 5-2 of the Rocky Mount Land Development Code against Plaintiff or any other similarly situated businesses;

D.      That this Court award Plaintiff its recoverable costs, including a reasonable attorney's fee pursuant to 42 U.S.C. §1988; and

E.      That this Court award Plaintiff all other relief in law and in equity to which it may be entitled.

DATED: July 31, 2014

HAYES, WILLIAMS, TURNER &
DAUGHTRY, P.A.


_____/s/ Douglas E. Turner, Jr._____
DOUGLAS E. TURNER, JR., Esquire
804 West Broad Street
Dunn, North Carolina 28334
(910) 292-6147 (Fax) (910) 891-1198
North Carolina Bar No.: 24579
dturner@harnettlaw.com
Local Civil Rule 83.1 Counsel


BENJAMIN, AARONSON, EDINGER &
PATANZO, P.A.

RICHARD L. WILSON, Esquire*          GARY S. EDINGER, Esquire*
Florida Bar Number 212997            Florida Bar Number 606812
3610 Dubsdread Circle                305 NE 1st Street
Orlando, Florida 32804               Gainesville, Florida 32601
(407) 963-7732  (Fax) (407) 423-8727 (352) 338-4440  (Fax) (352) 337-0696
rwilson14@cfl.rr.com                 gsedinger@aol.com

*Attorneys for Plaintiff*


*Pending admission *pro hac vice*